FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 20, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KAMI B., <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:17-CV-0368-LRS <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA* |

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 14) and the Defendant's Motion For Summary Judgment (ECF No. 15).

## JURISDICTION

Kami B., Plaintiff, applied for Title II Disability Insurance benefits (DIB) on January 17, 2014. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on February 18, 2016 before Administrative Law Judge (ALJ) Moira Ausems. Plaintiff testified at the hearing, as did Medical Expert (ME) John Morse, M.D., and Vocational Expert (VE) Thomas A. Polsin. On June 1, 2016, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C.

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT-** 1

§405(g) and §1383(c)(3).

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 35 years old. She has past relevant work experience as a sales clerk, telephone solicitor, housekeeper, and daycare worker. Plaintiff alleges disability since October 1, 2004, on which date she was 23 years old. Her date last insured for Title II benefits was September 30, 2009.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) evaluating the medical opinions of record; and 2) discounting Plaintiff's symptom testimony.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 404.1520(a)(4)(i). If he is not, the decision-maker proceeds to step two, which

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments,

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

those being: thoracic and cervical disc bulging with a possible cervical radiculopathy at an undetermined level; and L4-5 and L5-S1 degenerative disc disease with left L5 radiculopathy and mild compromise of left foot dorsiflexion vs. left peroneal nerve palsy; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) in that she can stand, walk, or sit up to 6 hours in an 8-hour workday; she is limited to frequent crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; she can never climb ladders, ropes, or scaffolds; she needs to avoid concentrated exposure to extreme cold; and she cannot tolerate any exposure to unprotected heights or dangerous, moving machinery; and 4) Plaintiff's RFC allows her to perform her past relevant work as a sales clerk, telephone solicitor, housekeeper and daycare worker. Accordingly, the ALJ concluded the Plaintiff was not disabled on or before her September 30, 2009, her date last insured for Title II benefits.

**MEDICAL OPINIONS**

It is settled law in the Ninth Circuit that in a disability proceeding, the opinion of a licensed treating or examining physician or psychologist is given special weight because of his/her familiarity with the claimant and his/her condition. If the treating or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id.* "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a non-examining medical advisor/expert need

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

not be discounted and may serve as substantial evidence when it is supported by other evidence in the record and consistent with the other evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. § 404.1513(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(d).

Plaintiff was treated by Angelika B. Kraus, M.D., at Newport Family Medicine Center for at least seven years. In a letter dated January 17, 2016, Dr. Kraus penned the following:

> To Whom It May Concern:
>
> [Plaintiff] has been my patient for over seven years. For the last six years she has had refractory C. difficile infections with chronic abdominal pain and intractable nausea and vomiting. She suffers from symptoms on a daily basis which interferes with sleep and activities of daily living. She also is diagnosed with several rheumatological illness[es] which add to her inability to work. [Plaintiff] at this time is unable to work and would benefit from disability coverage.

(AR at p. 2019). As the ALJ noted, the "last six years" would go back only to January 2010 and therefore, after Plaintiff's date last insured of September 30, 2009. (AR at p. 31).

Dr. Kraus wrote essentially the same letter on or about February 26, 2016, but this time added the following statement: "She also has neurologic issues and would likely have been unable to do sedentary work from before 9-30-2009." (AR at p. 2216). The ALJ gave specific and legitimate reasons for discounting Dr. Kraus' opinion. The ALJ noted that Dr. Kraus made no such statement while treating the Plaintiff prior to September 30, 2009, and her own objective findings did not support a limitation to sedentary work or less prior to September 30, 2009. (AR at p. 31).

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

Furthermore, it is not apparent from the record that Dr. Kraus treated Plaintiff for rheumatological and neurological conditions and specifically within the relevant period. And in any event, Dr. Kraus was equivocal in her opinion that Plaintiff "would likely have been unable to do sedentary work from before 9-30-2009." Plaintiff contends this is an ambiguity which required the ALJ to further develop the record. The court disagrees. Dr. Kraus was unambiguously equivocal in her opinion and had the opportunity to explain precisely what she meant, but did not do so.

Martha Winje, PA-C, at Newport Family Medicine, wrote a letter dated March 26, 2010 as follows:

> [Plaintiff] has symptoms and laboratory findings concerning (sic) for mixed connective tissue disease. It is very important that she had a rheumatology specialist involved in her care. Her symptoms significantly limit her ability to participate in a regular work schedule. She has fatigue, cold affects her hand and leg tissues, and she has chronic pain in her hands and leg/feet.

(AR at p. 2214).

The ALJ provided a specific and legitimate reason for discounting this opinion because PA-C Winje did not opine that Plaintiff's connective tissue disease related back prior to September 30, 2009. (AR at p. 30). Moreover, the evidence did not establish Plaintiff's connective disease prior to that date, as discussed by the ALJ. (*Id.*). In February 2010, Geoffry Jones, M.D., ordered a connective tissue disease workup that showed positive results for antinuclear antibodies and SS-B/La antibodies. Dr. Jones referred Plaintiff to rheumatology, but she did not see a rheumatologist until September 2011 because of insurance issues. (*Id.*). The court has not been made aware of any rheumatologist diagnosing connective tissue disease and relating it back to before September 30, 2009.

In June of 2015, Caron Cook, PA-C, with the Providence Health Services Gastroenterology Clinic wrote that Plaintiff had been a patient for the past year and had been struggling with chronic gastrointestinal issues causing "chronic daily

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

nausea, vomiting, and abdominal pain" which interferes with her sleep and daily activities and renders her unable to work. (AR at p. 2210). The ALJ gave no weight to PA-C Cook's opinion "as she only treated the claimant during a period that began five years after the claimant's date last insured." (AR at p. 30). This is a specific and legitimate reason further supported by the ALJ's recitation of medical evidence indicating Plaintiff did not report any GI issues until March 2011, well after her date last insured. (*Id.*).

Dr. Morse, the ME, testified that based on his review of the medical records, the onset of Plaintiff's GI (gastrointestinal) issues was around May 2014, and he confirmed that concerns about a connective tissue disorder were not discussed by her physicians until 2010. (AR at pp. 48-49). As such, Dr. Morse focused on the conditions which clearly existed prior to September 30, 2009, relating to Plaintiff's spine. He relied on his review of the records from Jeffrey Hirschauer, M.D., in opining that Plaintiff had a multilevel degenerative disc disease of her lumbar and perhaps thoracic spine, but that the findings with regard to Plaintiff's cervical spine were negative or non-specific. (AR at p. 50). Dr. Morse opined that Plaintiff's RFC was that as ultimately found by the ALJ. (AR at pp. 50-51).

On cross-examination, Dr. Morse testified that Dr. Hirschauer's records suggested Plaintiff had some left foot weakness (left foot drop) which eventually resolved. (AR at pp. 51-52; 350). Based on Dr. Hirschauer's summary from October 2009, Dr. Morse testified that at that time, a number of issues regarding the extent of Plaintiff's condition had not been resolved. (AR at p. 53). According to Dr. Hirschauer:

> To briefly recap [Plaintiff's] history, she is a lady who presented with what appeared to be a definite L5 radiculopathy when I saw her in May 2009. This was on the left side. She then had resolution of that and I saw her once again in August 2009 and it was my belief that she had a true cervical radiculopathy, although I could not determine the level.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

> If this upcoming thoracic MRI scan is unrevealing then she probably should be referred to a neurologist for a workup with a differential diagnosis, including multiple sclerosis.

(AR at p. 2207).

The MRI scan of the thoracic spine done in February 2010 revealed that the signal hyperintensity at the T4-5 level was not as evident as it was in a September 2009 scan. (AR at p. 2208). Dr. Hirschauer reiterated that Plaintiff should be referred to a neurologist. (*Id.*). It is unclear if and when Plaintiff was referred to a neurologist and the court had not been made aware of anything in the record from a neurologist offering a diagnosis of Plaintiff's condition and an opinion of her RFC prior to September 30, 2009.

In May of 2009, Plaintiff went to the hospital emergency room complaining of right lower leg weakness, paresthesias, and two bouts of urinary incontinence during the course of the last 24 hours. (AR at p. 412). According to the chart note from Karlene Arguinchona, M.D., the Plaintiff reported that "she has never had bouts of urinary incontinence." (*Id.*). Plaintiff was not incontinent during her visit to the emergency room and during that time, had two "controlled urinations" within four hours. (AR at p. 413). As the ALJ noted, the remaining medical record from the relevant period (until September 30, 2009), did not include any further complaints from the Plaintiff regarding incontinence and indeed, in July 2009, Plaintiff complained of urinary hesitancy for which she was prescribed antibiotics by March Chiu, M.D., who opined the hesitancy was due to a sub-clinical infection. (AR at p. 29).

Dr. Morse testified that incontinence would be something to be concerned about if there was any cervical spine stenosis, but that was not the case here. (AR at p. 52). Based on the September 2009 MRI scan of Plaintiff's cervical spine, Dr. Hirschauer was unable to determine any level of cervical nerve root impingement.

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

(AR at p. 449). Referring to medical records dating back to 2003 (AR at pp. 61-62; 619), Plaintiff's counsel asked Plaintiff about difficulties with frequent urination. Plaintiff testified she had to go about 10 times a day on short notice and remain in the bathroom for 10 to 25 minutes. (AR a p. 62). She testified this "continued on" after she stopped working. (*Id.*) In her hypothetical to the VE, the ALJ asked the VE to consider that Plaintiff would need ready access to a restroom and the VE concluded this would not preclude Plaintiff from performing her past relevant work. (AR at p. 84). Plaintiff's counsel asked if the same would be true if Plaintiff had to go the bathroom 10 times a day on short notice and stay in the bathroom for 10 to 20 minutes each time. (*Id.*). The VE testified that without some special accommodation, such a person would not "be able to keep a job for any substantive period of time." (AR at p. 85).

Plaintiff's testimony concerning continuing bouts of frequent urination from her alleged disability onset date of October 1, 2004 through September 30, 2009 (her date last insured) is simply not supported by the medical record as one would reasonably expect. Dr. Morse's opinion regarding Plaintiff's medical condition is supported by other evidence in the record and consistent with that other evidence. It is consistent with the opinion of the state agency physician, Robert Hander, M.D., who reviewed the medical record through July 2014 (AR at pp. 103-05), and it is consistent with Plaintiff's daily living activities and conservative medical treatment, as discussed below. The ALJ properly relied on Dr. Morse's opinion in determining Plaintiff's RFC on or before September 30, 2009.

**LAY TESTIMONY**

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that must be considered by an ALJ. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). In order to discount

competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff attended some community college classes from 2008 to 2010. One of her instructors, Leah Schaeffer, Ed.S., wrote a letter indicating she had been asked by Plaintiff to do so "concerning her obvious health issues." (AR at p. 2212). According to Ms. Schaeffer, Plaintiff "began taking classes at the Newport Center in the fall of 2008 and soon began to experience obvious serious health issues that affected her studies, and she often required accommodations and extensions on her assignments." The ALJ determined that Ms. Schaeffer's testimony merited little weight as she did not describe what she witnessed or specify the "obvious" health issues involved. (AR at p. 27). She also did not specify the required accommodations and as the ALJ noted, no medical source of record opined that Plaintiff needed accommodations to attend school. (*Id.*). As the ALJ further noted, notwithstanding "obvious" health issues, the Plaintiff's cumulative GPA for two years of college was 3.29. (*Id.*).

The ALJ provided specific and germane reasons to discount the testimony of Ms. Schaeffer.

**SYMPTOM TESTIMONY**

Where, as here, the Plaintiff has produced objective medical evidence of an underlying impairment that could reasonably give rise to some degree of the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's reasons for rejecting the Plaintiff's testimony must be clear and convincing. *Garrison v. Colvin*, 759 F.3d 95, 1014 (9th Cir. 2014); *Burrell v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014). If an ALJ finds a claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit [the]

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002). Among other things, the ALJ may consider: 1) the claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) the claimant's daily living activities; 4) the claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Id*. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In her decision, the ALJ wrote:

> In addition to objective medical findings, the claimant's activities of daily living prior to the date last insured were also inconsistent with her subjective allegations. She stated in her Function Report that she was still able to care for personal hygiene, prepare meals, and leave the home when she was not experiencing her colitis symptoms, and she reported shoveling snow in 2008 and 2009. Her ability to attend and obtain a high GPA in college courses is also inconsistent with her reported symptoms and limitations. The undersigned also notes that the claimant worked for three months in 2012, a period of time in which she continues to allege disability, and her employer reported that she worked at 100% productivity with no special accommodations for 26 hours per week.

(AR at p. 32).

Plaintiff takes issue with the ALJ citing Plaintiff's ability to care for personal hygiene, prepare meals and leave the home when she was not experiencing colitis symptoms. It is true, as Plaintiff notes, that a claimant need not be utterly incapacitated to receive disability benefits. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Rather, "[i]t is only where the level of activity is inconsistent with a claimed limitation that the activity has any bearing on credibility." *Id*. As noted above, the medical record

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

indicates that Plaintiff's colitis symptoms did not commence until after her date last insured and so this condition is not relevant to the question of whether Plaintiff was disabled on or before September 30, 2009. Plaintiff does not dispute that the record shows instances of her having shoveled snow in 2008 and 2009, nor does she dispute the period of work in 2012 cited by the ALJ. As discussed above, Ms. Schaeffer's statement about Plaintiff's "obvious" health conditions while attending college and her need for accommodations is extremely vague and there is no medical corroboration of there being need for accommodations. While certain aspects of the daily living activities cited by the ALJ (care for personal hygiene and preparing meals) may not constitute clear and convincing reasons for discounting Plaintiff's testimony about her limitations, the activities as a whole cited by the Plaintiff constitute a clear and convincing reason for discounting Plaintiff's testimony, particularly when considered in conjunction with the dearth of supporting medical evidence prior to September 30, 2009.

Contrary to Plaintiff's assertion, the ALJ did mention the "conservative treatment" of Plaintiff prior to September 30, 2009, specifically in reference to Dr. Hirschauer's note of September 20, 2009. In that note, Dr. Hirschauer stated he could not determine any level of cervical nerve root impingement from the MRI scan taken on September 3 and, as a result "[Plaintiff's] treatment must remain conservative." (AR at p. 29 and p. 449).[1]

//
//

---

[1] The court deems it unnecessary to address the ALJ's discussion regarding alleged narcotic-seeking behavior by Plaintiff in 2008 and 2009. (AR at p. 29).

*Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155. 1162-63 (9th Cir. 2008)

**ORDER GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

## CONCLUSION

The ALJ rationally interpreted the evidence and "substantial evidence"- more than a scintilla, less than a preponderance- supports her decision that Plaintiff was not disabled on or before September 30, 2009, her date last insured, and therefore she is not entitled to Title II benefits.

Defendant's Motion For Summary Judgment (ECF No. 15) is **GRANTED** and Plaintiff's Motion For Summary Judgment (ECF No. 14) is **DENIED**. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly, forward copies of the judgment and this order to counsel of record, and close this file.

**DATED** this   20th   day of November, 2018.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT- 14**